IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| BLAIRE M.P.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 4:19-cv-04174-JEH |

**Amended Order**

Now before the Court is the Plaintiff Blaire M.P.'s Motion for Summary Judgment (Doc. 13), the Commissioner's Motion for Summary Affirmance (Doc. 17), and the Plaintiff's Reply (Doc. 18).[1] For the reasons stated herein, the Court GRANTS the Plaintiff's Motion for Summary Judgment, DENIES the Defendant's Motion for Summary Affirmance, and REMANDS this matter for proceedings consistent with this opinion.[2]

**I**

Blaire M.P. filed an application for supplement security income (SSI) on March 30, 2017, alleging disability beginning on October 30, 2012. Her claim was denied initially on July 27, 2017 and upon reconsideration on November 2, 2017. Blaire filed a request for hearing concerning her SSI application which was held before the Honorable Robin J. Barber (ALJ) on February 6, 2019. Shortly before the hearing, Blaire amended her onset date to March 30, 2017 (the date she filed her

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 11, 12).
[2] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Docs. 7, 8) on the docket.

1

SSI application). At the hearing, Blaire was represented by an attorney, and Blaire and a vocational expert (VE) testified. Following the hearing, Blaire's SSI claim was denied on March 27, 2019. Her request for review by the Appeals Council was denied on July 11, 2019, making the ALJ's Decision the final decision of the Commissioner. Blaire filed the instant civil action seeking review of the ALJ's Decision on September 4, 2019.

## II

Blaire previously received disability benefits because of osteoarthritis of her left hip from 2012 until she went to prison in 2015. AR 46. In 2011, Blaire was involved in a motor vehicle accident and suffered a fractured left hip, pelvis, and several ribs. She was released from prison in March 2017. At the time she applied for SSI in March 2017, Blaire claimed the following condition limited her ability to work: osteoarthritis of the left hip. AR 222. Blaire underwent surgery on her hip and pelvis following the accident in 2011, had revision surgery on her hip in 2013, and had another hip surgery in June 2018. Her June 2018 surgery ended before it could be fully completed (total hip replacement) due to an infection, and then Blaire had to wait to undergo the remaining surgery because she had atrial fibrillation. Blaire finally underwent the total hip replacement on December 5, 2018. AR 1250-52.

At the time of the hearing in February 2019, Blaire was 48 years old, lived with her friend in his camper, and two months prior had undergone her most recent left hip surgery. The ALJ noted that Blaire was rocking while she testified, and Blaire explained that she did so because "I'm hurting . . . My hip and my neck and straight up my back." AR 57. She said she "sometimes" had problems walking or balancing and had been walking with a walker since her December 5th surgery. Blaire testified that the friend with whom she lived did the housework and he "usually" did the cooking. AR 48. Though her friend "mostly" did the

grocery shopping, when Blaire went grocery shopping she used a cart. AR 49. She did not have a driver's license. Blaire also testified about her mental health, specifically her panic attacks, anxiety, and depression. Finally, the VE was questioned.

### III

In her Decision, at Step Two, the ALJ determined that Blaire had the following severe impairments: osteoarthritis of the hip; status-post hemiarthroplasty[3] and a combination of affective disorder; a neurocognitive/intellectual disorder; anxiety disorder; and a personality disorder. AR 17. At Step Three, the ALJ explained that she considered Social Security Listings 1.02, 1.03, "and other listings and determined the claimant does not meet or medically equal the applicable criteria for any listed physical impairments." AR 17. The ALJ further explained:

> Nothing convincing exists in the record to suggest the claimant will have any significant difficulty ambulating or performing fine and gross motor movements with her upper extremities once she recovers from her hip surgery. There is nothing persuasive in the record to suggest the claimant will not recover from this surgery and return to ambulatory status within one year.

*Id*. The ALJ proceeded to consider whether Blaire's mental impairments met the listings the ALJ identified.

> The ALJ next made the following residual functional capacity finding (RFC):

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 416.967(a) except she is limited to routine, repetitive tasks in a working environment involving only occasional decision making and occasional changes in the work setting. In addition, she is capable of no more than occasional interaction with the public, co-workers and supervisors.

---

[3] "Arthroplasty in which one joint surface is replaced with artificial material, usually metal." Stedman's Medical Dictionary, *available at* Stedmans Medical Dictionary 399140.

3

AR 22. The ALJ discussed Blaire's subjective statements as to her physical and mental impairments, certain of her medical records, and her internal medicine consultative examination in June 2017, her mental status evaluation in June 2017, and mental status evaluation in May 2018. The ALJ also discussed the State Agency reviewing doctors' evaluations in June/July and October 2017. The ALJ stated "[p]ain is a completely subjective phenomenon." AR 23. The ALJ identified the instances Blaire underwent left hip surgery and the reasons for those surgeries.

As for the June 2017 internal medicine consultative examination, the ALJ erroneously stated that during the examination Blaire was able to walk fifty feet unassisted "without difficulty" and could walk on her toes and heels. AR 24.[4] The ALJ credited the internal medicine consultative examiner's observations as "persuasive since they illustrate that the claimant is independently ambulatory and had no problems with her manual dexterity." AR 24. The ALJ thus determined those findings were indicative of an ability to perform at the sedentary exertional level. Under "IMPRESSION" in the evaluation report, the internal medicine consultative examining doctor wrote: "Problem #1: History of left hip osteoarthritis status post hip replacement now with severe restrictions and limitations with ambulation." AR 468. In addition to that examination, the ALJ relied upon the State Agency findings of June/July and October 2017 – Blaire did not meet or equal any listings and she was limited to a restricted range of light-duty work activity.

## IV

Blaire argues: 1) the ALJ erred in failing to find Blaire met a Listing under 1.02(A) or 1.03 for her left hip, a major weight bearing joint; 2) the ALJ erred in

---

[4] *See* AR 467 ("The claimant could walk greater than 50 feet without support *with difficulty* . . . "The claimant was *unable* to perform toe/heel walk") (emphasis added).

failing to find Blaire met a Listing under 12.05; and 3) the RFC determination was not supported by substantial evidence.

**A**

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 416.966. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to

5

engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of his impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform his past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Blaire claims error on the ALJ's part at Steps Three and Four.

**B**

With regard to Blaire's Listings 1.02(A) and 1.03 arguments, she says the ALJ erred by ignoring Blaire's documented unrelenting pain. Blaire similarly states in

6

support of her RFC argument that the ALJ's conclusion that her subjective complaints of pain were not supported by the objective evidence was error. The Commissioner says Blaire's Listings argument fails because the evidence did not establish that she had an inability to ambulate, as required to meets Listings 1.02(A) and 1.03. The Commissioner argues Blaire's RFC challenge also fails because the RFC finding was consistent with the medical opinions of record. Because the ALJ's consideration of Blaire's pain factored into her Step Three findings and her RFC finding, the Court will first address the parties' arguments in that regard.[5]

Blaire argues that the ALJ did not properly apply 20 C.F.R. § 416.929 though she claimed she used it in making her determination that Blaire could perform sedentary work. In her Decision, the ALJ found that Blaire's medically determinable impairments "could reasonably be expected to cause some symptoms," but Blaire's subjective statements as to the severity of her pain were not supported by the objective evidence. AR 23. Section 416.929 tasks an ALJ with evaluating the intensity and persistence of a claimant's pain by considering the objective medical evidence and other evidence, including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional

---

[5] Listing 1.02 Major dysfunction of a joint(s) (due to any cause) is:
Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and *chronic joint pain and stiffness* with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02(A) (emphasis added).

limitations and restrictions due to pain and other symptoms. 20 C.F.R. § 416.929(c).

The ALJ pointed out that Blaire underwent left hip surgery with hardware placement after a 2011 motor vehicle collision, she underwent a revision surgery in 2013 due to hardware loosening, she underwent surgery in June 2018, and had the total hip arthroplasty surgery in December 2018 which was deferred from June 2018. The ALJ also cited an April 2017 medical note from Blaire's visit to her doctor to restart her medications for depression and anxiety upon her release from prison. The note provided Blaire was not taking any other medications at that time, and it listed "No joint pain, No muscle pain" under the Review of Symptoms and "Normal strength, Normal gait" under Physical Examination. AR 347-48. The ALJ stated, "Imaging of her pelvis and hips performed in June 2017 revealed no acute left hip findings and showed only mild degenerative changes in her right hip." AR 23. After citing Blaire's first two surgeries, the April 2017 medical note, and the June 2017 imaging, the ALJ concluded: "Nothing convincing exists in the record to suggest the claimant had a serious difficulties [sic] for several years after her revision surgery in 2013." *Id*. The ALJ also included in her discussion of the evidence a record in which Blaire reported losing her balance while standing on a chair to dust her ceiling. The ALJ said, "The fact that the claimant was performing this type of activity is not indicative of an individual capable of sedentary work activity." *Id*.

Even giving the ALJ's Decision the required deference, the Court simply cannot find that ALJ properly considered the evidence. She found the objective evidence did not support the severity of Blaire's complaints. AR 23. The evidence of four surgeries on the same hip over the course of seven years, on its face, provides ample objective medical support for Blaire's statements as to the intensity and persistence of her left hip pain during the relevant time. There were also

imaging results in the record that the ALJ did not discuss which confirmed Blaire had issues with her left hip. The ALJ's finding that the "objective evidence" did not support the severity of Blaire's complaints is dubious to begin with.

Certainly, an ALJ does not commit legal error simply because she fails to discuss every piece of evidence. *See McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) ("Generally speaking, an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence"). Here, the ALJ chose to rely on: a single medical record dated April 2017, the reason for which was unrelated to Blaire's hip pain; a portion of Blaire's left hip imaging results in June 2017; and one instance of Blaire dusting while standing on a chair. The ALJ did not err by failing to discuss every piece of evidence; instead, she erred by ignoring a line of evidence contrary to her conclusion. *See Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (stating an "ALJ may not ignore an entire line of evidence that is contrary to the ruling); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (an ALJ "must confront the evidence that does not support his conclusions and explain why it was rejected"); *see also Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994) (concluding that meaningful review of the ALJ's decision could not occur because the court could not establish if substantial evidence supported the denial of benefits where the ALJ failed to mention an entire line of evidence in his decision).

For instance, a January 2016 medical record while Blaire was incarcerated assessed her with "left hip pain" and allowed her low bunk and slow walk orders, a July 2017 medical record included the doctor's statement following an examination that Blaire "will likely always have some element of pain in her hip," and a June 2018 medical record indicated upon physical examination Blaire had pain at the extremes of left hip motion and she walked with a limp. AR 333, 473,

494. At each of those visits, Blaire complained of left hip pain. In June 2018: "Radiographs of the left hip demonstrate a press-fit hemiarthroplasty with cystic change in the acetabulum and the hemiarthroplasty has worn proximally into the pelvis. There is increased sclerosis in the subchondral bone of the acetabulum." AR 494. The "impression" at that time was: "1. Mechanical complication of internal left hip prothesis. [and] 2. Posttraumatic left hip acetabular osteoarthritis." AR 495. The June 2018 noted further provided that a bone scan demonstrated that "most of [Blaire's] pain is likely to be due to the acetabular region." AR 495. In May 2017, Blaire reported that she picked up her house "a little at time [sic]" and was unable to cook as she was unable to stand. In October 2017, Blaire reported that during the day she sat "a little" and walked "a little" and sat when she cooked all due to pain. AR 267. The ALJ cited Blaire's statement to consultative psychology examiner Angela Lew, Ph.D. that medication moderated her pain (Blaire said it "helps with pain"), but omitted that Lew's report first indicated that Blaire stated "it hurts all the time." AR 480. This evidence illustrates how the ALJ selected and discussed only that evidence which better supported her finding that Blaire's subjective pain complaints were excessive as compared with the record evidence. *See Herron*, 19 F.3d at 333 (explaining an ALJ may not select and discuss only the evidence that favors her ultimate conclusion).

The Commissioner argues that the ALJ's RFC finding was supported by State Agency Richard Lee Smith, M.D.'s opinion, and Blaire did not submit a medical opinion suggesting that she was more limited than the ALJ found. As for the Commissioner's latter argument, the Court rejects it. The Seventh Circuit Court of Appeals very recently reiterated that while a claimant bears the burden to produce medical evidence that supports her disability claim, "[s]ubsequent decisions have made clear that the burden is to produce evidence, not opinions." *Kemplen v. Saul*, No. 20-1651, 2021 WL 345751, at *4 (7th Cir. Feb. 2, 2021)

10

(unpublished opinion) (citing *Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011)). That said, the Court acknowledges that while a claimant is not *required* to produce medical opinions supporting their claim, the regulations expressly provide that a medical source opinion constitutes "evidence" that a claimant *can* submit supporting their claim. 20 C.F.R. § 404.1513(a)(2). Nevertheless, undoubtedly here, Blaire presented sufficient medical evidence to support her pain complaints. As for the Commissioner's former argument, the ALJ's reliance upon Dr. Smith's opinion does not salvage her erroneous consideration of Blaire's pain complaints. As detailed above, the ALJ presented a skewed picture of the record evidence pertaining to Blaire's pain. Specifically, she cited to imaging results that presented a less dire picture of the state of Blaire's left hip – the very imaging which Dr. Smith reviewed, his review of which the Commissioner emphasizes. Moreover, Dr. Smith's opinion was dated October 31, 2017. Several more medical records pertaining to the condition of Blaire's hip (thus relevant to the question of the intensity and persistence of her pain) that post-date Dr. Smith's opinion appear in the record.

     Finally, the Commissioner argues the ALJ committed no error where she relied upon the State Agency doctors' opinions and the consultative examination findings. Such reliance does not remedy the foregoing errors the ALJ committed. As with Dr. Smith's opinion, the other State Agency opinions and two of the consultative examinations were conducted at various points in 2017. The consultative examination done in May 2018 was a mental, not physical, consultative examination. That the ALJ relied upon the medical opinions to support her finding that Blaire's pain did not preclude her from sedentary work makes her conclusion as to Blaire's pain complaints – that the objective evidence did not support the severity of those complaints – suspect. After all, Blaire's pain complaints continued after those opinions were rendered, and she later

underwent two additional surgeries on her left hip.  The ALJ found the internal medicine consultative examiner's June 2017 observations were persuasive "since they illustrate that the claimant is independently ambulatory[.]"  AR 24.  The ALJ highlighted State Agency Calixto Aquino, M.D.'s notation that despite the fact that Blaire walked with an antalgic gait, her physical examinations showed full muscle strength in all four extremities.  The ALJ highlighted that State Agency Dr. Smith limited Blaire to standing or walking for no more than two hours per day which "essentially limits the claimant to the sedentary exertional level."  AR 24.

In each instance, the ALJ emphasized the doctors' observations as to Blaire's ability to ambulate.  But that only provides the reasoning for why the ALJ found Blaire did not meet Listing 1.02(A) or 1.03[6], as the ALJ found Blaire's severe left hip impairment did not render her unable to ambulate effectively.  However, the ALJ did not articulate how the evidence supportive of Blaire's ability to ambulate also supported a finding that her pain did not preclude her from working in a sedentary job.  *See* SSR 96-8p, at *7 (stating that an RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations").  The ALJ's legal errors necessitate remand.  *See Keys v. Barnhart*, 430 F. Supp. 2d 759, 772 (N.D. Ill. 2006) (holding remand appropriate where court could not conclude that the ALJ's mental RFC determination was supported by substantial evidence and free from legal error); *Ramos v. Astrue*, 674 F. Supp. 2d 1076, 1080 (E.D. Wis. 2009) ("The ALJ commits legal error if he fails to comply with the SSA's regulations and Rulings for evaluating disability claims").

---

[6] The Court does not reach the question of whether the ALJ's Step Three finding that Blaire did not meet Listings 1.02(A) and 1.03 on the basis of her ability to ambulate was supported by substantial evidence.  That is for the ALJ to revisit, as appropriate, upon remand.

V

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 13) is GRANTED, the Defendant's Motion for Summary Affirmance (Doc. 17) is DENIED, and this matter is REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for the ALJ to discuss all the evidence, not just that which supports the ALJ's ultimate conclusion. Remand for that reason will necessarily require the ALJ to re-visit her findings at Step Three and Step Four.

The Clerk of Court is directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that this case is remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion pursuant to 42 U.S.C. § 405(g), Sentence Four."

*It is so ordered.*

Entered on April 23, 2021.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE